FILED

12/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0661

DA 22-0661

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 289N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

NANCY JEANNE CAHOON,

     Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 21-169
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Jennifer A. Dwyer, Avignone, Banick & Williams, Bozeman, Montana

     For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant Attorney General, Helena, Montana

          William E. Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs: September 4, 2024

Decided: December 3, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Nancy Jeanne Cahoon (Cahoon) appeals an order of the Twenty-First Judicial District Court, Ravalli County, denying her motion to suppress. The District Court is affirmed.

¶3 This matter arises from a traffic stop and subsequent search of a vehicle on September 3, 2021, when Cahoon, the driver, was pulled over due to expired vehicle registration. Cahoon explained that she was borrowing the vehicle. She was unable to produce her license or any registration or insurance information and indicated that her license "might be" suspended. The state trooper ordered Cahoon out of the vehicle and ran her information, confirming that her license was suspended. At some point during the stop, the trooper also learned that there was a valid warrant out of Ravalli County Justice Court for failure to appear, though the timing of this information is contested for the first time on appeal. Noting the appearance of trash, multiple bags, cigarette smell, rocks, and coloring books with colored pencils—apparently items "consistent with drug users"—the trooper asked for consent to search the vehicle and retrieved a consent to search form.

¶4 At some point, another trooper arrived. Cahoon asked again whether they needed permission from the vehicle's owner to search the car. She ultimately signed the form, and

the troopers found a broken glass pipe with white residue and a plastic baggie with white crystalline substance that field tested positive for methamphetamine. Cahoon was arrested and cited for possession of methamphetamine, possession of drug paraphernalia, driving with a suspended license, and failure to have liability insurance.

¶5 On November 29, Cahoon moved to suppress the evidence of drugs and paraphernalia. She argued that the State unconstitutionally prolonged the stop without particularized suspicion and requested a hearing. The State filed its response in opposition on January 10, 2022, and a hearing was set for January 31. On January 20, the parties held a preliminary pretrial conference. Cahoon failed to appear. When questioned about her absence, Cahoon's counsel explained that they had good communication, that Cahoon understood she needed to be at the hearing, and that "there was just a miscommunication on our part." The parties discussed the date for the suppression hearing and the District Court indicated its understanding that "the ruling on the motion to suppress will direct the result of the case." The District Court specifically stated that Cahoon would "need to be here on the 31st. So if that doesn't happen, then we know there is an issue" with Cahoon's non-appearance.

¶6 The suppression hearing arrived and Cahoon again failed to appear. Her counsel stated,

> Your Honor, I have nothing to report on my client's whereabouts today. I do see Ms. Cahoon. She works at Albertson's quite a lot, so I am in very good contact with her. I do not know why she's not here today, Your Honor. As the court knows, our staff has been out for a couple weeks. However, that excuse is running dry. So yeah, that's all the information I have.

3

The State noted that the hearing was a critical stage of the proceeding that should not proceed without Cahoon and suggested that the motion be denied based on her failure to appear or, alternatively, that the court could decide the motion on the merits without a hearing. Cahoon's counsel offered no objection to the court deciding the case on the parties' briefs. The trooper's report and video of the stop were submitted with Cahoon's brief, so the District Court took the matter under advisement based on the information already in the record.

¶7 Cahoon appeared for a one-minute status hearing on February 3 where the District Court indicated that it would issue its order on the motion to suppress within the next week. On March 4, the District Court issued its Opinion & Order Re: Motion to Suppress. It thoroughly analyzed the stop based on the parties' briefing and the video, concluding that the duration of the stop was permissibly extended due to Cahoon's active warrant rather than suspicion of illegal drug activity and denying the motion. On June 16, Cahoon appeared for a change of plea hearing where she pled guilty without a plea agreement. At the hearing, she specifically reserved her right to appeal the denial of the motion to suppress. On appeal, she asserts that the District Court necessarily erred in its denial because it violated her constitutional right to be present by conducting an evidentiary hearing on the motion in her absence.

¶8 However, critically, Cahoon has failed to properly preserve this argument for appeal, not because she waived the right to make constitutional challenges by pleading guilty as the State asserts, but because the argument was not properly raised below. "The

4

general rule in Montana is that this Court will not address either an issue raised for the first time on appeal or a party's change in legal theory," because it is "fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Unified Indus., Inc. v. Easley*, 1998 MT 145, ¶ 15, 289 Mont. 255, 961 P.2d 100 (internal quotation and citation omitted).

¶9    Cahoon argues that her right to presence claim is "inextricably intertwined with the denial of her suppression motion," because had the hearing occurred with her present, she might have elicited a litany of hypothetical testimony[1] that could have changed the outcome of the motion. She explains that she is "limited in her ability on appeal to show *why* the order was wrongly decided *because* she was deprived of establishing the record at the evidentiary hearing." (Emphasis in original.) This is logical, but ignores that the District Court elected, without objection from Cahoon and upon urging of the State, to decide the motion on the parties' briefing; while the "evidentiary hearing" was scheduled and counsel appeared, the January 31 hearing did not have the effect of an evidentiary hearing. Rather, the matter was considered as submitted on the briefs, which may be unusual but is nevertheless permissible in this context.

---

[1] Many of the theories Cahoon now offers were either comprehensively addressed by the video footage (e.g., the duration of the stop) or conceded by Cahoon's brief (e.g., the timing of when the trooper learned about the Justice Court warrant). Further, even if Cahoon had obtained further information about the trooper's interest in the rocks and coloring supplies, this ignores that the District Court made its conclusion based on the warrant, not on the suspicion of drug activity. Cahoon cannot create unresolved factual disputes of these issues for the first time on appeal by merely calling them as such.

¶10    Moreover, we require arguments to be raised below so that a record is made which allows us to sufficiently address the merits of any claim.  Had the presence issue been raised below, the District Court could have addressed the issue by, for example, rescheduling a hearing.  On appeal, Cahoon argues the Office of the Public Defender did not know the date of the suppression hearing before January 20 and could not have communicated with Cahoon about it because the office staff was away or otherwise having "communication issues," thereby making her failure to appear involuntary and not a waiver of her right to be present.  *See State v. Bekemans*, 2013 MT 11, ¶ 25, 368 Mont. 235, 293 P.3d 843 ("A defendant who voluntarily fails to appear waives her right to be personally present." (citation omitted)).  However, the record is devoid of any evidence supporting Cahoon's claims and therefore has not been adequately preserved for appeal.

¶11    Further, all the information the District Court needed to address the parties' arguments was in the briefs.  As the District Court noted, the motion could have been denied based on non-appearance alone, but it chose to address the motion on the briefs and not hold a hearing.  Again, because the right to presence argument was not raised by Cahoon before the District Court, the record is entirely insufficient to determine factual and legal questions relevant to Cahoon's constitutional claim.  This is precisely why we generally preclude such arguments from being raised for the first time on appeal.

¶12    Because Cahoon's constitutional argument was not properly raised below, this Court does not have a sufficient record to reach the merits of her claim.  Cahoon does not

otherwise challenge the substance of the District Court's denial of her motion regarding the search. The District Court is affirmed.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE